IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DURWYN TALLEY,<br><br>  Petitioner,<br><br>v.<br><br>JOHN VARGA, Warden,<br>  Dixon Correctional Center<br><br>  Defendant. | Case No. 18-cv-05661<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Durwyn Talley, an Illinois prisoner, petitions for a writ of habeas corpus under 28 U.S.C. § 2254 [38]. The Petition is denied, and a certificate of appealability will not issue. Talley has also filed an Emergency Motion for Status Update [81]. Talley's emergency motion is denied as moot in light of this Order.

### I. Background

A federal habeas court presumes that state court factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted). The Appellate Court of Illinois is the last state court to have adjudicated Talley's case on the merits. *People v. Talley*, 2011 IL App (1st) 093352-U (Ill. App. Dec. 5, 2011) (unpublished order) (reproduced at Dkt. 74-3). The following sets forth the facts as that court described them and the procedural background of the state criminal and post-conviction proceedings.

1

### A. Factual Background

This case involves the February 19, 2008 armed robbery of a Quiznos restaurant on 35th Street in Chicago. *Id.* at 1.

At the bench trial, Dewanda McBride, the Quiznos shift manager, testified that at about 8:30 p.m. she was working with her co-worker, Lamont Dorch, when Talley walked into the restaurant. *Id.* at 4. Talley placed an order for a sandwich. *Id.* While McBride was ringing up his order, Talley stepped back, pulled up his jacket, and showed her the handle of his gun while telling her to give him all the money in the cash register. *Id.* McBride opened the cash register and gave Talley some money. *Id.* Talley grabbed the rest of the money and walked out of the restaurant. *Id.* McBride then hit the emergency button which notified police, who arrived 10 minutes later. *Id.* The encounter in the Quiznos was recorded by the restaurant's surveillance footage. *Id.*

Sergeant Rochowicz testified that, after the robbery, Dorch, the other Quiznos employee present, approached him and reported the events that had just transpired, along with a description of the robber, his vehicle, and the direction he drove when he left the scene. *Id.* at 5. Rochowicz subsequently put out a flash message regarding the same. *Id.* Once the Jeep was located, he, Officer Quattrocki, and Officer Milazzo reported to that location and saw officers take Talley into custody. *Id.* Quattrocki then performed a pat-down on Talley and recovered $372 from his right jacket pocket. *Id.* Rochowicz observed a handgun on the floorboard of the Jeep. *Id.*

Officer Jones testified that, at approximately 8:30 p.m., he and his partner, Officer Lawson, were in a patrol car when they heard Rochowicz's emergency dispatch describing a black male in a red Jeep Cherokee heading northbound on Indiana Avenue. *Id.* at 1. They pulled over a red Jeep Cherokee that fit the description. *Id.* Two other police cars had also responded to the scene. *Id.* Jones approached the vehicle to question the driver, who turned out to be Talley. *Id.* In the midst of questioning him, another officer, Sergeant Martin, ran up, pulled Talley from the Jeep, and "took him to the ground." *Id.* Talley was then placed in handcuffs and in the back of a police car. *Id.* Officers then drove Talley back to the Quiznos where McBride and Dorch identified him in the back seat of the police car. *Id.* at 2.

B.  **State Court Proceedings**

The circuit court convicted and sentenced Talley to 34 years' imprisonment for armed robbery and a concurrent 6-year sentence for armed-habitual criminal. *Id.* at 1. Talley filed several post-trial motions; the circuit court denied them all. *Id.* at 6.

On February 2, 2011, Talley appealed the conviction—filing a *pro se* brief after discharging his appointed counsel.[1] *Id.* at 6. Talley stated five claims on appeal:

>   (1) The circuit court erred by denying his motion to suppress evidence based on an allegedly illegal *Terry* stop and subsequent arrest without probable cause;
>   (2) The circuit court erred by denying his motion to suppress evidence based on an allegedly suggestive show-up identification;
>   (3) His trial counsel provided ineffective assistance;
>   (4) The State knowingly and deliberately included falsehoods and/or acted in reckless disregard for the truth; and
>   (5) The circuit court showed personal bias and prejudice toward defendant. *Id.* at 1.

---

[1] The appointed counsel had already filed a brief with the appellate court. Dkt. 74-1. However, at Talley's request the court struck the counsel's brief and considered his *pro se* brief instead. Dkt. 74-3.

On December 5, 2011, the Illinois Appellate Court affirmed the decision. *Id.*

On February 7, 2012, Talley filed a Petition for Leave to Appeal to the Illinois Supreme Court raising the following seven issues:

(1) The state presented false testimony at trial, dkt. 1-1 at 128-31;
(2) Petitioner was denied effective assistance of counsel, *id.* at 132-35;
(3) The show-up was suggestive and the identification, both in court and out of court, should have been suppressed, *id.* at 136-38;
(4) The police did not have probable cause to arrest and thus the show-up identification was tainted, *id.* at 139–42;
(5) Petitioner's Sixth Amendment Right was violated under the Confrontation Clause, *id.* at 143;
(6) The government knowingly and deliberately included falsehoods to bolster a show of probable cause, to cover up a suggestive show-up, and to convict Petitioner, *id.* at 144–45; and
(7) The police reports demonstrated that the prosecutors knew false testimony was given and failed to correct it. *Id.* at 146.

The Supreme Court of Illinois denied Talley's Petition on March 28, 2012. Dkt. 74-4.

On December 26, 2012, Talley retained counsel and filed a Petition for Post-Conviction Relief raising the following claims:

(1) Ineffective assistance of trial counsel;
(2) Ineffective assistance of appellate counsel; and
(3) Defendant's right to due process was violated as a result of false testimony and other factors. Dkt. 1-1 at 147-64.

On June 27, 2014, the circuit court dismissed the petition. *Id.* at 207.

On July 17, 2014, Talley's counsel appealed the dismissal of the Post-Conviction Petition, reasserting only that Defendant was denied his constitutional right to effective assistance of counsel. *Id.* at 213-42. On October 15, 2015, the Illinois Appellate Court affirmed the dismissal. *Id.* at 288–300.

On December 12, 2015, Talley filed a *pro se* Petition for Leave to Appeal the dismissal of the Post-Conviction Petition. *Id.* at 320-46. The Supreme Court of Illinois denied Talley's Petition on March 30, 2016. *People v. Talley*, No. 120222, 2016 Ill. LEXIS 496 (Ill. Mar. 30, 2016).

The Illinois courts further denied several subsequent *pro se* motions that raised no new substantive issues. Dkt. 1-1 at 462, 456–64, 497, 496–98, 528–53, 554. In June 2019, Talley filed the present Amended Petition for Writ of Habeas Corpus in federal court.

## II. Discussion

Talley's federal habeas petition asserts five claims: (1) the prosecution knowingly used false testimony at the suppression hearing and at trial; (2) his trial counsel was ineffective; (3) his appellate counsel was ineffective; (4) his post-conviction counsel was ineffective; and (5) the appellate court violated his due process and equal protection rights during his successive post-conviction appeal. Dkt. 38 at 5–7. The first claim is procedurally defaulted, the second and third claims are meritless, and the fourth and fifth claims are non-cognizable.

### A. Claim One Is Procedurally Defaulted

Talley's first claim is that the prosecution knowingly used false testimony at the suppression hearing and at trial. The Seventh Circuit has held that a federal habeas court will not review a claim on its merits if rejected by the state court on independent and adequate procedural grounds. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591-92 (7th Cir. 2010). If an Illinois appellate court held that the petitioner failed to meet a

5

state procedural requirement, that claim is procedurally defaulted in federal court. *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997).

In this case, the state appellate court rejected the first claim on appeal. Applying Illinois Supreme Court Rule 341(h)(7), the court held that the claim was waived for "failing to make any arguments in support thereof." Dkt. 74-3 at 10. Thus, Claim One is procedurally defaulted.

Talley may overcome a finding that a claim is procedurally defaulted either by demonstrating cause and prejudice, or by showing that this court's failure to consider this claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). In order to satisfy the cause and prejudice standard, Talley must show that an objective external factor "impeded [his] efforts to comply with the State's procedural rule." *See Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017) (citing *Murray v. Carrier*, 477 U.S. 478, 488). Talley did not allege any external factors that caused him to fail to follow procedure, and so, his claim does not meet the cause and prejudice standard.

Denying this claim will also not cause a fundamental miscarriage of justice. For a fundamental miscarriage of justice to occur, a petitioner has to prove he is actually innocent of the crime. *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). It "is an extremely high bar for the habeas petitioner to clear." *Id*. The state proceedings make it clear that "[e]vidence that the defendant robbed the Quiznos while armed with a gun was overwhelming." *Talley*, 2011 IL App (1st) 093352-U at *14. Talley does not

meet his burden of establishing actual innocence. Claim One is procedurally defaulted.

### B. Claim Two and Three Are Meritless

Talley next claims that his trial counsel was ineffective for failing to ask the court to reconsider rulings on the suppression hearings and allowing a conviction on perjured testimony. The parties disagree on whether this claim is procedurally defaulted. The Court need not address these arguments, however, as the claim fails on its merits.

The Supreme Court set forth a two-prong test to determine whether a defendant was denied his right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Under this *Strickland* test, Talley must show that (1) the trial "counsel's representation fell below an objective standard of reasonableness" and (2) he was prejudiced such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. However, courts need not address both prongs of the inquiry if a defendant makes an insufficient showing in one of the prongs. *Id.* at 697. Therefore, if there is a lack of sufficient prejudice, Talley's ineffective counsel claim fails the *Strickland* test and is meritless.

The Illinois Appellate Court found substantial evidence that Talley robbed the Quiznos while armed. *Talley*, 2011 IL App (1st) 093352-U at *14. There was witness testimony describing how Talley flashed a gun and ordered McBride to give him all the money. *Id.* Additionally, this testimony was supplemented by a surveillance

camera that recorded the encounter. *Id.* Dorch also informed a nearby officer about the robbery and location of the getaway vehicle. *Id.* Using this information, officers were able to locate Talley and his vehicle within a matter of minutes. *Id.* Both McBride and Dorch, having seen Talley's face during the incident, were able to confirm his identity as the armed robber. *Id.* Given the weight of this evidence, "there is no reasonable probability that the result of the trial would have been different but for counsel's allegedly professional errors." *Id.* Therefore, Talley cannot show that he was prejudiced by his counsel's alleged mistakes. His ineffective assistance claim thus fails.

Talley's third claim is ineffective assistance of appellate counsel. Talley filed his direct appeal *pro se*. Dkt. 74-3 at ¶ 37. The Supreme Court has held that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Therefore, Talley's third claim is meritless because he chose to proceed without counsel and cannot assert ineffective assistance of counsel as a *pro se* litigant.

### C. Claim Four and Five Are Non-Cognizable

Talley's fourth claim—ineffective assistance of post-conviction counsel—is non-cognizable. The statute governing habeas petitions specifically bars ineffectiveness claims for post-conviction proceedings. 28 USC § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

8

proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Therefore, Talley cannot raise this claim in his habeas petition.

Talley's fifth claim is that the appellate court violated his due process and equal protection rights during his successive post-conviction appeal. Constitutional challenges to the post-conviction *proceedings* are not claims entitled to federal habeas relief because the allegations do not relate directly to the petitioner's detention itself, but rather a collateral issue. *See Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) (holding that federal habeas corpus claims cannot remedy delays in state post-conviction proceedings). Talley's claim is a collateral attack on the court proceedings, not a direct constitutional attack on his detention. Therefore, this claim is also non-cognizable.

Nevertheless, the Court will address the arguments Talley raises in support of his fifth claim. Talley advances three allegations: (1) the appellate court denied him the right to proceed *pro* se; (2) it failed to provide him with a copy of the transcript and record; and (3) there was an undue delay in proceedings.

First, Talley claims that the appellate court, on his successive post-conviction appeal, denied him the right to proceed *pro se*. Talley wanted to substitute the post-conviction petition that his former counsel wrote with one he drafted himself. The court denied Talley's request because it had already made a decision on the counsel's petition at this point. Dkt. 1-1 at 207. Illinois law states, "only one petition may be filed by a petitioner" for post-conviction relief, unless given leave by the court. 725

ILCS 5/122-1(f). Because Talley did not demonstrate cause for leave, his due process rights were not violated by the court's denial of his successive petition.

Second, Talley claims the court failed to provide him with a copy of the state court record. However, Talley filed a reply brief that contains citations to the record. Dkt. 79. Thus, the Court finds he was not denied access to the state court record.

And third, Talley claims there were undue delays in his proceedings that resulted in a violation of his due process rights. Talley supports this assertion using the Tenth Circuit's holding in *Harris v. Champion*, 938 F.2d 1062 (10th Cir. 1991). This case addressed circumstances when an extreme delay in court proceedings impairs a petitioner's ability to raise their claims. However, it addressed these delays specifically within the context of whether the requirement to exhaust state remedies violated a petitioner's due process rights. This case is not applicable as any delay here is not related to the exhaustion requirement.

### D. A Certificate of Appealability Will Not Issue

When a district court enters a judgement on a habeas petition, it must also deny or grant a certificate of appealability. 28 U.S.C. §2253(c). Such a certificate will only be issued if the applicant has made a "substantial showing of denial of constitutional right." *Id.* Or, as the Supreme Court state: "Where a district court has rejected the constitutional claims on the merits…[t]he petitioner must demonstrate the reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In this case, based on the weight of the evidence, the procedural default, and the non-cognizable

10

claims, a reasonable jurist would not find the assessment of the claims debatable or wrong. Therefore, a certificate of appealability will not issue.

### III. Conclusion

For the stated reasons, Talley's Petition for a Writ of Habeas Corpus [38] is denied, and a certificate of appealability will not issue. Talley's emergency motion [81] is denied as moot in light of this Order.

E N T E R:

Dated: March 25, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge